## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

---

MICHAEL L. VICKERS, *et al.*,

                Plaintiffs,

           v.

JOSEPH R. BIDEN, JR., President, in his
official capacity, *et al.*,

                Defendants.

Civil Action No. 2:24-cv-00169

---

### Declaration of Kinney County Sheriff Brad Coe

I, Brad Coe, hereby declare:

1.      I reside in Kinney County, Texas, am a United States citizen more than 18 years of age and am fully competent to testify in a federal court.

2.      I am a plaintiff in the above-captioned case.

3.      In general, and as the data below show, the law-enforcement situation from illegal immigration in Kinney County has worsened since February 2021 as the challenged policies continue to be implemented.

4.      I am the elected Sheriff of Kinney County, Texas. I have served in that capacity since January 1, 2017.

5.      Prior to my service as Sheriff, I was a Border Patrol officer for 30 years, from January 20, 1985, to December 31, 2015.

6.      As Sheriff, I oversee the Kinney County Jail, which can house 6 inmates. It costs my office $70.00 per person, per day to detain someone in our jail. When our jail space is full, I contract with Medina, Kerr, Burnet, and Goliad County to house our inmates, at a cost of $70.00 per person, per day.

7.      Prior to February 18, 2021, my office had an excellent, cooperative relationship with Immigration and Customs Enforcement (ICE) and Customs and Border Protection (CBP). It was routine and it was expected that if my deputies had arrested an illegal alien for the commission of a crime, and the alien was no longer being detained by the County, ICE or CBP would take custody of the alien and remove him from the United States.

8.      Prior to February 18, 2021, it was also routine and it was expected that if a criminal alien had finished serving his sentence for a crime, ICE or CBP would take custody of that alien and remove him from the United States when my office notified them that his sentence was ending.

9.      Since February 2021, there has been a massive increase in illegal immigration through Kinney County and in the number of crimes committed by illegal aliens in Kinney County. This increase is evident from those criminal charges reported to the Texas Criminal Justice Information Systems (CJIS) and discussed in the Declaration of Kinney County. In the year 2020, Kinney County apprehended a total of 180 illegal aliens. In the year 2021, Kinney County apprehended a total of 1,121 illegal aliens. In the year 2022, that number rose to 3,055 illegal aliens apprehended, and in the year 2023, more than 2,126 illegal aliens were apprehended. Current apprehensions thus far in 2024 are approximated to be over 550.

10.     A similar rise in apprehensions of alien smugglers occurred during this period. In the year 2020, Kinney County apprehended a total of 47 individuals attempting to smuggle illegal aliens. In the year 2021, Kinney County apprehended a total of 188 individuals attempting to

smuggle illegal aliens. In 2022, 329 alien smugglers were apprehended, and in 2023, 643 individuals who attempted to smuggle illegal aliens were apprehended. Current apprehensions of alien smugglers thus far in 2024 exceed 114.

11.     The law enforcement burden of this increase of illegal alien criminal activity has also required a tremendous increase in overtime hours for county law enforcement in pursuits, booking, patrols, etc. The towing fees alone for the vehicles involved in illegal alien smuggling has cost Kinney County law enforcement over $98,000. The increase of illegal alien criminal activity and limited jail space capacity of the Kinney County jail has resulted in more than 154 criminals being turned away after an arrest.

12.     As a result of this surge in illegal immigration and in the crimes committed by illegal aliens, after February 18, 2021, the Kinney County jail has been full or near full. At any given time, my office will also have between 10-12 inmates in the other jails that I contract with.

13.     The overwhelming majority of detainees that my office has arrested are either illegal aliens or involved in activity relating to illegal immigration.

14.     The immigration-related detention costs since February 2021 have created an unsustainable financial burden for the County. Kinney County's expenditures for the detention of illegal aliens continues to reach unprecedented levels. Through Operation Lonestar and other programs, the State of Texas reimburses some—but not all—law-enforcement and detention expenditures incurred by my office due to the drastic increase in crimes committed by illegal aliens and smugglers. Such grants are capped and, for fiscal year 2022, these law enforcement and detention expenditures were well over $50,000 greater than what the State of Texas has reimbursed or will reimburse the County for under these programs. Since February 2021, my office has incurred $243,085 in expenses relating to the out of county housing of illegal aliens and smugglers

that are not reimbursed through Operation Lonestar or other grant programs. The related costs of transporting these same individuals to other counties under contract to house Kinney County prisoners has also accrued expenses in the amount of $9,886.30.

15.     If the current elevated amount of illegal immigration and associated crime continues, I expect that my office will be required to spend more than our 2025 budget accounts for. The Sheriff's Office budget for 2023 was $1,564,234 which was $508,408 more than our previous year's budget. In 2024, our budget was 1,811,377.57. These levels of spending are not sustainable for a county tax base of only 2,500 residents. The additional cost will come in the form of detention expenses, medical expenses, supplies cost, transportation costs and overtime associated with the surge in illegal immigration.

16.     My deputies have called ICE multiple times to ask ICE to take custody of illegal aliens who have committed crimes. ICE has refused to take custody of such aliens since February 18, 2021. More specifically, ICE has refused to take custody or initiate removal proceedings for any illegal alien convicted of criminal trespass.

17.     I am not aware of a single occasion since February 18, 2021, when ICE has agreed to take custody of an illegal alien when requested by my office.

18.     ICE has notified my office that illegal aliens convicted of criminal trespass would not be accepted for removal proceedings because they no longer meet the criteria for removal under the new policies.

19.     In addition to the Kinney County Jail, the county is also the location of the Kinney County Detention Center, which is used to detain prisoners for the U.S. Marshals Office of the Federal Government. This federal detention facility can hold up to 420 inmates and routinely holds upwards of 270 inmates with federal immigration detainers. If the unlawful policies challenged in

this case are allowed to continue, the majority of those immigration detainers barring the immediate release of those prisoners will likely result in their release back into the community and place County residents in harm's way.

20.     On or about May 1, 2021, an illegal alien who as in custody for the federal offense of violating 8 U.S.C. § 1326 (reentry of a removed alien), and had a detainer placed on him by ICE prior to February 18, 2021, was about to be released. My deputy called ICE to notify them that the alien was about to be released and to request that they take custody. Instead of picking up and removing the aliens, as previously was the practice, ICE stated that they were no longer interested in executing the detainer or taking custody of the criminal alien. My deputy then called CBP to see if they would take custody of the alien to remove him, and they refused to take the alien as well. Based on my experience as Sherriff, these ICE and CBP policies continue to the present.

21.     Because ICE and CBP are no longer taking custody of illegal aliens who have already been arrested or convicted of at least one crime, those aliens are committing additional crimes in Kinney and neighboring counties after their release. Due to illegal aliens not being subject to removal proceedings for convictions of criminal trespass, their continued presence in the community has caused an elevated level of criminal activity that my office and county taxpayers has had to contend with.

22.     The surge in illegal alien crime after February 2021, has greatly endangered the public safety in Kinney County and has made the task of enforcing the law more dangerous. The crimes committed by illegal aliens include human smuggling, human trafficking, criminal mischief, criminal trespass, assault, burglary, evading arrest, child endangerment and theft.

23.     When I took my oath of office, I swore that I would protect the people of Kinney County. ICE's policy of not taking custody of most illegal alien criminals since February 18, 2021,

has made it difficult for me to keep this oath; because of limited county resources my office cannot cope with the dramatic increase of illegal alien criminal activity.

24.     As a former Border Patrol officer, as Sherriff of Kinney County, and as a Texan living near our southern border, I want the officer defendants in the above-captioned action to do the jobs that Congress has mandated to their offices by statute because their doing so would make the people I have sworn to protect, as well as my deputies and me, safer.

25.     I have personal knowledge concerning the information contained in this declaration.

I declare under penalty of perjury that the foregoing is true and correct. Executed this 13th day of October 2024 in Brackettville, Texas.

Brad Coe
Sherriff,
Kinney County, Texas